**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> v. <br><br> **GIUSEPPE GIUDICE,** <br><br> Defendant. | Criminal Action No. 13-cr-0495-01 (ES) <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court is defendant Giuseppe Giudice's ("Mr. Giudice") Rule 36 motion ("Motion") seeking to "clarify the judgment of conviction and portions of the record." (D.E. No. 57; D.E. No. 57-1 ("Mov. Br.") at 1). The Court has considered the parties' submissions and decides this matter without oral arguments under Federal Rule of Civil Procedure 78(b). For the following reasons, Mr. Giudice's Motion is DENIED.

**I.  BACKGROUND**

On February 26, 2014, Mr. Giudice entered a plea agreement (the "Plea Agreement") with the United States Attorney for the District of New Jersey (the "Government"). (D.E. No. 57-6, Plea Agreement ("Plea Agrmt.")). Pursuant to the Plea Agreement, Mr. Giudice entered a guilty plea before this Court to five counts of criminal offenses, including one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, contrary to 18 U.S.C. §§ 1341 and 1343 (the "Mail and Wire Fraud Conviction"). (D.E. No. 30, Judgment of Conviction ("JOC")). Relatedly, Mr. Giudice's wife and co-defendant, Teresa Giudice ("Ms. Giudice"), also entered a plea agreement with the Government and pleaded guilty to four counts of criminal offenses, including the same Mail and Wire Fraud Conviction. (D.E. No. 31).

1

By way of background, the Mail and Wire Fraud Conviction was based on Mr. Giudice and Ms. Giudice's use of false and fraudulent supporting documents to apply for nine mortgage loans and home equity lines of credit ("HELOC"). (*See* D.E. No. 40 at 40:6–42:8). Relevant to this Motion, in December 2006 and February 2007, Mr. Giudice and Ms. Giudice applied for and obtained two HELOCs from Wachovia. (Mov. Br. at 4; D.E. No. 58 ("Opp'n Br.") at 2–3). Over the next three years, Mr. Giudice and Ms. Giudice withdrew almost the entire credit amounts by cash advances and failed to pay the money back. (*See generally,* D.E. Nos. 59 & 59-1). On October 28, 2009, Wachovia charged off $165,731.26 in unpaid principal and $2,760.94 in unpaid finance charges on one of the two HELOCs. (D.E. No. 59-1 at 40 (ECF pagination)). On December 23, 2009, Wachovia again charged off the money owned on the other HELOC, which was $248,857.64 in unpaid principal and $3,537.08 in unpaid finance charges. (D.E. No. 59 at 44 (ECF pagination)). About two and half years later, on August 27, 2012, Wells Fargo, as successor-in-interest to Wachovia, discharged the two HELOCs and released the lien on Mr. Giudice and Ms. Giudice's mortgages. (*See* D.E. No. 57-5; D.E. No. 63 ("Reply Br.") at 27 (ECF pagination)[1]). Upon discharge, Mr. Giudice and Ms. Giudice were released by Wells Fargo from "any obligation to make payments on the loan now or in the future." (D.E. No. 57-5).

On October 2, 2014, Mr. Giudice was sentenced by this Court to 41 months of imprisonment for all five counts of criminal offenses.[2] (D.E. No. 57-3, Transcript of the Sentencing Hearing ("Sent. Tr.") at 130:18–24; *see also* JOC at 2). In addition, Mr. Giudice was ordered to make a restitution in the amount of $414,588.90 to Wells Fargo and to pay a fine of

---

[1] Unless otherwise specified, pin cites to the Reply Brief and the accompanying exhibits refer to the pagination generated by the Court's Electronic Case Files ("ECF") system.

[2] Mr. Giudice was sentenced for imprisonment for a term of 41 months on four of the three convictions and a concurrent term of 12 months on the last conviction. (JOC at 2).

$10,000. (JOC at 7–8). The Court also imposed the same amount of restitution on Ms. Giudice, with a fine of $8,000. (D.E. No. 31 at 6–7). The judgments of conviction for both defendants states that the other defendant was subject to a restitution order to the same victim for the same loss. (JOC at 8; D.E. No. 31 at 7).

Almost exactly four years later, on October 10, 2018, the Immigration Court of York, Pennsylvania (the "Immigration Court") held that Mr. Giudice's Mail and Wire Fraud Conviction is an aggravated felony as defined under the Immigration and Nationality Act ("INA"), which renders him statutorily ineligible for cancellation of removal. (Reply Br. at 78–85 ("An alien who is deportable from the United States is eligible for cancellation of removal if he . . . has not been convicted of any aggravated felony.") (quoting INA § 240A(a)). Under INA § 101(a)(43)(M)(i), an aggravated felony is defined as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101. In finding that Mr. Giudice caused a loss to a victim of over $10,000, the Immigration Court partly relied on the presentence investigation report ("PSR") and this Court's restitution order. (Reply Br. at 80–81).

Mr. Giudice appealed to the Board of Immigration Appeals ("BIA"), which affirmed the Immigration Court's holding and found that, *inter alia*, Mr. Giudice's Mail and Fraud Conviction is "one for an aggravated felony within the meaning of sections 101(a)(43)(M)(i)" of the INA. (*See* Mov. Br. Ex. K[3] at 6). In so finding, the BIA explained that

> We are not solely relying on the amount of loss outlined in the restitution order. Instead, we are concluding, based on the contents of the respondent's plea colloquy, his plea agreement, his pre-sentence report, **and** the restitution order in the judgment, that the total loss to the respondent's victim exceeded $10,000.

---

[3] Exhibit K accompanying Mr. Giudice's Motion is a copy of the BIA's decision in *In re: Giuseppe Giudice a.k.a. Joe Giudice,* dated April 11, 2019. It was provided to the Court in a hard copy and was not filed on the Court's ECF system.

(*Id*. at 4) (emphasis original). The BIA further affirmed the Immigration Court's decision to order Mr. Giudice removed from the United States to Italy. (*Id.* at 8).

Mr. Giudice moves before this Court under Federal Rule of Criminal Procedure 36, "seeking limited clarifications of the JOC and the record." (Mov. Br. at 3).

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 36 allows correction of "a clerical error in a judgment, order, or other part of the record, or . . . an error in the record arising from oversight or omission." A clerical error is one that "involves a failure to accurately record a statement or action by the court or one of the parties." *United States v. Bennett*, 423 F.3d 271, 278 (3d Cir. 2005) (quoting 26 James W. Moore, *et al.*, Moore's Fed. Practice & Procedure ¶ 636.02[2] (3d ed. 2005)). Moreover, errors arising from "oversight or omission by the court, rather than through a clerical mistake, are not within the purview of Rule 36." *Id.* (quoting *United States v. Guevremont*, 829 F.2d 423, 426 (3d Cir. 1987)). This is because, in the context of Rule 36, the error "must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *Guevremont*, 829 F.2d at 426. If a correction sought is "designed to vindicate an unstated assumption of the sentencing court," Rule 36 does not provide jurisdiction to correct such alleged error. *Bennett*, 423 F.3d at 278 (internal citations omitted). As such, "Rule 36 is normally used to correct a written judgment of sentence to conform to the oral sentence pronounced by the judge." *Id.*

## III. DISCUSSION

Mr. Giudice seeks to clarify that: (i) the loss range in Mr. Giudice's plea agreement "does not reflect any admission by him that his crime caused an out-of-pocket loss to Wells Fargo" (Mov. Br. at 11); (ii) "the Court never found that Wells Fargo had an out-of-pocket loss of $414,588.90"

4

(*id.* at 14); (iii) "the restitution order was not pursuant to the [Mandatory Victim Restitution Act]" (*id.*); and (iv) "any stipulations, perceived admissions or findings of 'loss' for purposes of the criminal case are without prejudice to what may be argued in Mr. Giudici's [sic] removal proceedings" (*id.* at 14–15).

As a threshold matter, the clarifications or corrections sought by Mr. Giudice are not errors "merely of recitation," nor are they "mechanical in nature." *See Guevremont*, 829 F.2d at 426. Rather, Mr. Giudice alleges oversights or omissions by this Court and indeed seeks to "vindicate an unstated assumption of the sentencing court." *See Bennett*, 423 F.3d at 278. The claims of Mr. Giudice's Motion are thus outside the purview of Rule 36 and should be denied on this ground alone. *See United States v. Agnes,* 490 F. App'x 426, 428–29 (3d Cir. 2012) (affirming the denial of a Rule 36 motion where defendant alleged "an oversight or omission by the court" and stating that such claim is "simply not within the purview of Rule 36"). But in any event, as the Court explains below, the record is clear that no oversight or omission was committed, and no clarification or correction is needed.

### A.  The Plea Agreement

Mr. Giudice first argues that "the record must be clarified to reflect that Mr. Giudice's stipulation in the plea agreement to a loss range . . . does not reflect any admission by him that his crime caused an out-of-pocket loss to Wells Fargo." (Mov. Br. at 11). The Plea Agreement states that "Specific Offense Characteristic § 2B1.1(b)(1)(H) applies since the loss resulting from the defendant's conduct was more than $400,000 but less than $1,000,000, resulting in an increase of 14 levels." (Plea Agrmt. at 10). Citing to the Government's reply sentencing memorandum, Mr. Giudice argues that the loss calculation included in the Plea Agreement "serves as a proxy for culpability, not as a calculus of how much the victim is owed." (Mov. Br. at 10).

5

The parties agree that the record is silent as to the Court's finding regarding whether Mr. Giudice admitted that he caused a loss to Wells Fargo. (*See* Opp'n Br. at 7 n.2 ("The record is silent as to whether the Court concluded that the defendant affirmatively admitted that Wachovia suffered actual loss . . . ."); Reply Br. at 18 & 29 (agreeing with the Government)). But just because the record is silent does not mean that the Court made an omission that needs clarification—whether Mr. Giudice admitted, when he signed the Plea Agreement, that he caused a loss to Wells Fargo simply did not form the basis of the Court's sentencing ruling.



Mr. Giudice essentially asks this Court to make a finding now, more than five years after the JOC, on Mr. Giudice's contemporaneous understanding of the Plea Agreement when he stipulated that "the loss resulting from [his] conduct was more than $400,000 but less than $1,000,000." (Plea Agrmt. at 10). Not only did this issue have no bearing on Court's sentencing ruling, it was never disputed or otherwise raised by the parties, and, thus, was never considered by

---

4 Mr. Giudice argues that the Court "did not adopt the PSR as the findings of the Court." (Reply Br. at 9 & 27–28). As discussed in Section III (B) below, this proposition is plainly wrong.

5 Exhibit B accompanying Mr. Giudice's Motion is a copy of the Final Presentence Report for Mr. Giudice and was not filed on the Court's ECF system.

this Court. It is both unnecessary and inappropriate for this Court to now reexamine the record and make a ruling on a non-issue.

B.  **The Court's Finding on Wells Fargo's Loss**

Mr. Giudice next asks the Court to clarify that "any findings made by the Court regarding 'loss' for purposes of restitution was not a finding regarding the out-of-pocket losses to Wells Fargo." (Mov. Br. at 12). While admitting that both the JOC and the transcript from the sentencing hearing states that "the amount ordered constitutes the total amount due to the victim for the loss," Mr. Giudice nevertheless argues that the Court "did not find that the amount of restitution ordered constituted the out-of-pocket losses to Wells Fargo." (*Id.* (quoting JOC at 8 and Sent. Tr. at 133:7–8)). According to Mr. Giudice, a distinction exists between a "loss" and an "out-of-pocket loss"— while "Mr. Giudice does not dispute that there was a 'loss' solely for purposes of the United States Sentencing Guidelines," he argues that Wells Fargo did not suffer an out-of-pocket loss because "Wells Fargo discharged the loans." (Reply Br. at 7).

The Government argues, *inter alia*, that this Court "adopted the PSR as the findings of the Court" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Moreover, the Government argues that "defense counsel did not dispute that Wachovia had suffered an actual loss" during the sentencing hearing. (*Id.*).

In response, Mr. Giudice argues that the Court "did not adopt the PSR as the finding of the Court." (Reply Br. at 9). While admitting that the Court specifically stated in the Statement of Reasons that the Court "adopts the presentence investigation report" with a change that is irrelevant to the current Motion, Mr. Giudice appears to argue that the Court did not adopt findings "with regard to non-Guideline issues." (*See id.* at 27–28 (stating that "there is absolutely no place on the form for Your Honor to have indicated that . . . Your Honor accepted or rejected certain

7

findings in the PSR that do not relate to the calculation of the Guidelines . . . ."). In other words, Mr. Giudice seemingly argues that findings regarding the restitution ordered were non-guideline issues and thus were not part of the Court's finding when it explicitly adopted the PSR.

To the extent that Mr. Giudice argues that the Court never adopted the PSR as the findings of the Court because the Court "never stated" so during the sentencing hearing (*id.* at 9), this is a specious argument. The Court adopted the PSR with one modification through the Statements of Reasons, which the Court properly entered into the record as an attachment to its JOC. (D.E. No. 59-3). This has been the widely accepted practice in this Circuit and is sufficient to satisfy the requirement of specific findings under Federal Rule of Criminal Procedure 32. *See, e.g.*, *United States v. Barney,* 276 F. App'x 204, 205–06 (3d Cir. 2008) (noting that the district court adopted the PSR in its Statement of Reasons); *United States v. Cunningham*, 178 F. App'x 135, 137 (3d Cir. 2006) (same); *United States v. Clark*, 182 F. App'x 117, 120 (3d Cir. 2006) (same).

The distinction between "a loss for guideline purposes" and "an out-of-pocket loss" as a "non-guideline issue" is also a red herring. Restitution is clearly a guideline issue. U.S.S.G. § 5E1.1–Restitution ("In the case of an identifiable victim, the court shall enter a restitution order for the full amount of the victim's loss . . . ."). More importantly, the underlying reasons are the same for the loss amount of $414,588.90 to form the basis for the calculation of Mr. Giudice's Sentencing Guidelines range, on the one hand, and for the Court to order restitution in this amount, on the other—the Court specifically found that Mr. Giudice's Mail and Wire Fraud Conviction caused an actual loss to Wells Fargo in the amount of $414,588.90.

First, it is undisputed that the loss amount of $414,588.90 formed the basis of Mr. Giudice's Sentencing Guideline calculation. (*See* Reply Br. at 7 ("Mr. Giudice does not dispute that there was a 'loss' solely for purposes of the United States Sentencing Guidelines.")). Specifically, 14

levels were added to the base offense level because ████████████████████████████

████████████████████████████████████████████████████████████████████████

██████. Contrary to Mr. Giudice's assertions, this loss range for guideline purposes was not based on the Court's adoption of the stipulated loss range included in the Plea Agreement. (*See* Reply Br. at 20) (stating that the Court adopted "the stipulated 'loss' range for purposes of the United States Sentencing Guidelines"). Rather, it was based on the Court's finding that, *despite of* the Plea Agreement,[6] "the facts of the case indicate both defendants are jointly responsible for *an actual loss of at least* $414,588.90 in the mortgage fraud" and an additional "intended loss of $111,311.87, representing concealed income in the bankruptcy fraud." (PSR ¶ 90) (emphasis added). ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████. It is thus clear that Mr. Giudice's final offense level is specifically supported by the factual finding that Mr. Giudice caused an actual loss of $414,588.90 to Wells Fargo.

Second, at the very least, Mr. Giudice never challenged the guideline portions of the PSR. During the sentencing hearing, Mr. Giudice's counsel argued for a modification to the PSR on a guideline issue unrelated to the Motion at hand.[7] After the Court heard arguments from both sides and ruled in Mr. Giudice's favor, the Court asked: "based on that ruling we have, Mr. Feinstein, any other objection to the PSR that you have?." Mr. Giudice's counsel responded: "None whatsoever, Judge." (Sent. Tr. at 13:22–25). The Court asked again shortly after: "as far as any guideline objections[,] I have addressed all of them, correct?," to which Mr. Feinstein again

---

[6] The plea agreement entered by Ms. Giudice stipulated a loss range between $200,000 and $400,000, which the PSR indicated was less than the actual loss sustained.

[7] Mr. Giudice's counsel argued that Mr. Giudice should be placed in criminal history category 1, instead of category 2, because a prior arrest did not result in a judgment of conviction. (Sent. Tr. at 8:12–12:7).

9

responded: "Yes." (*Id.* at 14:25–15:3). Consequently, the Court read into the record the final advisory guideline range, which included, *inter alia*, "[t]otal offense level 21, criminal history category 1," "a fine range of 7,500 to $75,000," and "restitution in the amount of $414,588.90," which counsel for both sides confirmed was correct. (*Id.* at 15:4–16).

The record is thus clear that the Court's adoption of the guideline range was supported by the finding that Mr. Giudice caused an actual loss to Wells Fargo in the amount of $414,588.90. Because, as discussed in Section III (C) below, restitution is mandatory in this case pursuant to the Mandatory Victims Restitution Act ("MVRA"), the Court ordered restitution in the same amount. To the extent that Mr. Giudice does not dispute any of his sentence based on the guideline calculation, which he does not (Mov. Br. at 1) and could not (*see* Plea Agrmt. at 5 & 6–7), there is no basis for him to contest the Court's underlying finding of Wells Fargo's actual loss of $414,588.90.

### C. Legal Basis for the Restitution Order

Mr. Giudice also asks the Court to clarify that the restitution at the amount of $414,588.90 was not ordered pursuant to the MVRA and was instead ordered under 18 U.S.C. § 3663(a)(3). (*See* Mov. Br. at 2). 18 U.S.C. § 3663(a)(3) states that "[t]he court *may* also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." (emphasis added). The MVRA, on the other hand, states that "[t]he court *shall* order . . . that the defendant make restitution to the victim of the offense" in the amount "equal to" the value of the loss sustained by the victim. 18 U.S.C. § 3663A (emphasis added). In essence, Mr. Giudice again asks the Court to clarify that the restitution was not ordered "because of an actual out-of-pocket loss to Wells Fargo." (Mov. Br. at 2).[8]

---

[8] The Court finds Mr. Giudice's argument disingenuous at the very least, given that he made the exact opposite argument before the Immigration Court. In support of the same contention that his Mail and Wire Fraud Conviction

10

As support, Mr. Giudice contends that none of the following documents state that restitution was ordered pursuant to the MVRA: (i) the JOC; (ii) the Sentencing Transcript; (iii) the Plea Agreement; and (iv) the Government's sentencing memorandum. (*See, e.g.*, Reply Br. at 20–21 & 26). Mr. Giudice further argues that, because the Court assessed Mr. Giudice's finances, which would be inappropriate if restitution was ordered under MVRA, the Court clearly ordered restitution pursuant to the Plea Agreement. (*Id.* at 14).

Mr. Giudice, again, ignored the Court's explicit finding . As the Government correctly points out, the Plea Agreement, in contrast, does not specify the dollar amount of restitution or that Wells Fargo is to receive the restitution. (Opp'n Br. at 11). The Court, therefore, could not have ordered restitution pursuant to the Plea Agreement.

More importantly, and contrary to Mr. Giudice's allegation, the JOC and the sentencing transcript specifically states that "[t]he amount ordered represents the total amount due to the victim for this loss." (JOC at 8; Sent. Tr. at 133:7–8). The restitution was also ordered "for

---

caused no actual loss to Wells Fargo, Mr. Giudice argued before the Immigration Court that "he was ordered to pay Wells Fargo restitution because restitution is required under 18 U.S.C. § 3663A." (Reply Br. at 80).

distribution to Wells [ ] Fargo Bank." (JOC at 8; Sent. Tr. at 133:3). The Court thus found that Wells Fargo was "an identifiable victim" under the MVRA and ordered restitution in the amount of Wells Fargo's actual loss. *See* 18 U.S.C. § 3663A; *see also Morillo v. Attorney Gen. of United States*, 751 F. App'x 335, 338 (3d Cir. 2018) (noting that restitution is ordered pursuant to MVRA when the restitution was distributed to an identifiable victim).

The Court also stated during Ms. Giudice's sentencing hearing that "of course, restitution is mandatory in this case." (Sent. Tr. at 227: 5–6). Because restitution in the amount equal to the value of the loss sustained by the victim is mandatory, and because the Court found that Wells Fargo sustained a loss, Ms. Giudice, like Mr. Giudice, was ordered to pay the same $414,588.90 in restitution, regardless of what she agreed to in her plea agreement. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Nevertheless, Mr. Giudice argues that the PSR as adopted by the Court is not binding because he objected to the PSR's finding that "restitution in the amount of $414,588.90 was mandatory pursuant to the MVRA." (Reply Br. at 9). As support, Mr. Giudice cites to three pieces of evidence: (i) the sentencing transcript where the Court stated: "I know there are nonguideline objections you are joining with Mr. Klingeman [ ]." (Sent. Tr. at 14:22–24); (ii) ███████████████



It is not at all clear that the Mr. Giudice maintained his objection to the findings in the PSR regarding the restitution ordered. The arguments presented on behalf of Ms. Giudice in the August 20, 2014 letter, which Mr. Giudice joined, were clearly guideline objections, where Ms. Giudice argued that the correct loss amount for her guideline calculation was "in fact, zero." (*Id.* at 70). These guideline objections were retracted on August 29, 2014,[9] because Ms. Giudice and the Government

---

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

13

had reached an agreement that Ms. Giudice's guideline offense level would be calculated based on the stipulated loss amount in her plea agreement, as opposed to zero. (*Id.* at 65). As a result, Mr. Giudice's

[redacted] To the extent Mr. Giudice objected to the loss amount as a guideline issue at some point before the sentencing hearing, Mr. Giudice did not maintain this objection at the hearing when he specifically represented to the Court that he had no more guideline objections "whatsoever." (Sent. Tr. at 13:25).

[redacted], Ms. Giudice never did,[10] and restitution in the same amount was thus imposed on her. It is in fact telling that Mr. Giudice does not cite to either Ms. Giudice's sentencing memorandum or her portion of the sentencing transcript to support the proposition that the "nonguideline objections" he allegedly joined were in fact relating to restitution.

Finally, the Court's evaluation of the Giudices' financial situation was irrelevant to the restitution order imposed pursuant to MVRA. Rather, as the Court clearly stated at the sentencing hearing, the Court needed "[the financial] information to determine whether indeed [the Giudices] had the ability to pay a fine." (Sent. Tr. at 227:4–5).[11]

---

[10] Subsequent to the correspondences with the probation officer, Ms. Giudice never made any argument, either through her sentencing memorandum or during the sentencing hearing, regarding the "Wells Fargo HELOC disposition . . . in connection with restitution." (*See* Reply Br. at 65).

[11] The Court made the statement during Ms. Giudice's portion of the sentencing hearing. However, the Court also made clear, when the Court discussed the Giudices' conduct in providing the Court with their financial information, "[t]his transcript will serve for both defendants." (Sent. Tr. at 157:11–12).

14

For the foregoing reasons, the record is clear, and does not need clarification, that the Court imposed restitution in the amount of $414,588.90 on Mr. Giudice pursuant to the MVRA for the actual loss sustained by Wells Fargo.

### D. Prejudicial Effect of the Court's Finding, Stipulation, or Admission in Mr. Giudice's Immigration Proceedings

Mr. Giudice asks this Court to clarify the record that "any stipulations in the plea agreement or perceived admissions by Mr. Giudice regarding 'loss,' as well as any judicial findings regarding 'loss' for purposes of restitution, are without prejudice to what may be argued at Mr. Giudici's [sic] removal proceeding." (Mov. Br. at 14). The only justification Mr. Giudice provides for this request is that "[t]he concept of 'loss' pursuant to the sentencing guidelines differs from the concept of 'loss' for immigration proceedings." (Mov. Br. at 14; Reply Br. at 29–30).

This argument should be presented in Mr. Giudice's immigration proceedings, not before this Court. Mr. Giudice cites no law, and the Court has found none, that authorizes this Court to decide what the immigration court or the BIA can or cannot consider, let along determine what argument the immigration courts may consider. This Court is in fact divested of jurisdiction to review orders of removal based on an alien's commission of an aggravated felony. 8 U.S.C. § 1252(C).

## IV. CONCLUSION

For the foregoing reasons, Mr. Giudice's Rule 36 motion is DENIED. An appropriate Order accompanies this Opinion.

*s/Esther Salas*

**Esther Salas, U.S.D.J.**